UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRUNSWICK TKTKONNECT, LLC                                    Plaintiff

v.                                            Civil Action No. 3:22-cv-00004-RGJ

SHEILA P. KAVANAUGH, ET AL.                                Defendants

* * * * *

## MEMORANDUM OPINION AND ORDER

Sheila P. Kavanaugh and Kimberly Bunton (collectively, "Defendants") move to dismiss [DE 17] Brunswick TKTKonnect, LLC's ("Plaintiff") complaint. [DE 1]. Plaintiff responded, and Defendants replied. [DE 23; DE 25]. This matter is ripe. For the reasons below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I.        BACKGROUND

These facts are set out in the complaint and accepted as true for purposes of the motion to dismiss. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Plaintiff Brunswick TKTKonnect, LLC ("Plaintiff"), a New-Jersey based LLC, was a member of TKTKonnect, LLC ("Konnect"). [DE 1 at 1, 4]. Konnect, a two-member LLC, is a women and minority-owned business formed in February 2015 under Kentucky law. [*Id.* at 4]. Plaintiff Brunswick owned a 49 percent membership interest in Konnect, and TKT & Associates ("TKTA") owned a 51% membership interest in Konnect. [*Id.*]. Defendant Kavanaugh is the Manager of Konnect. Kavanaugh and Defendant Bunton are both officers of TKTA. [*Id.* at 1].

Plaintiff states that Konnect's business was built on a contract with Toyota and that neither Defendant had any role in the formation of Konnect. Defendants became involved in April 2020. [*Id.* at 5]. Plaintiff states that TKTA and Plaintiff are jointly responsible in performing Konnect's

marketing, advertising, sales, and operational activities and that they are prohibited from competing with Konnect.  [*Id.* at 6].  Plaintiff has been a member of Konnect since the company's formation and significantly contributed to Konnect's growth and success.  [*Id.* at 8].  Plaintiff alleges that TKTA and Defendants "ambushed" Plaintiff at a dinner meeting in New York City revealing Defendants' "oppressive scheme" to drive Plaintiff out of Konnect.  [*Id.* at 9].  Plaintiff also alleges that TKTA and Defendants fabricated "unfounded alleged breaches" of Konnect's Operating Agreement by Plaintiff.  [*Id.* at 10].  Plaintiff states it cured those alleged complaints and demanded mediation to address the unlawful oppression.  [*Id.* at 13].

Plaintiff alleges that while frozen out of Konnect's operations and communications, TKTA "[s]tole the Stellantis opportunity," an opportunity that Stellantis, N.V., an automotive company, and the National Business League presented to Konnect to participate in a pilot for the nation's first Black supplier development program.  [*Id.* at 2, 15–17].  Plaintiff further alleges that TKTA and Defendants purposely concealed from Plaintiff the Stellantis opportunity by freezing Plaintiff out of Konnect's day-to-day operations and denying Plaintiff access to Konnect's communications.  [*Id.* at 17].  Plaintiff adds that TKTA and Defendants renewed their unlawful efforts to expel Plaintiff as a member of Konnect after an unsuccessful mediation.  [*Id.* at 18].  Lastly, Plaintiff states TKTA and Defendants held without basis or authorization a special meeting of Konnect's members to terminate Plaintiff's membership interest.  [*Id.* at 21].

Plaintiff commenced an arbitration proceeding against TKTA and Defendants on November 19, 2021.  [*Id.*].  On January 4, 2021, Plaintiff sued Defendants Kavanaugh and Bunton in this action "to halt and obtain all necessary and appropriate relief for their breaches of fiduciary duties and other unlawful conduct."  [*Id.* at 27].

Plaintiff alleges that TKTA as well as Kavanaugh and Bunton froze Plaintiff out of Konnect and kept Plaintiff in the dark about Konnect's business. [*Id.* at 1]. In its complaint, Plaintiff asserts causes of action for breach of fiduciary duties, tortious interference with contract, tortious interference with business relations, conversion, civil conspiracy, and for declaratory and injunctive relief against Kavanaugh and Bunton. [*Id.* at 4]. Defendants now move to dismiss Plaintiff's complaint. [DE 17].

## II.     MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III.    DISCUSSION

Because Konnect is a Kentucky LLC, Kentucky law governs Plaintiff's claims.[1]

### A.  Standing

Defendants first challenge Plaintiff's standing to bring any of its claims asserted in the complaint.  [DE 17-1 at 11].  "A member may maintain a direct action against a limited liability company, another member, or a manager to redress an injury sustained by, or to enforce a duty owed to, the member *if the member can prevail without showing an injury or breach of duty to the company*."  KRS § 275.337(1) (emphasis added).  In *Smith v. Tarter*, the court held this rule applies to LLC members.  305 F. Supp. 733, 740 (E.D. Ky. 2018).

Defendants contend that only Konnect has standing to bring these claims because they are derivative claims.  [DE 17-1 at 12–13].  Defendants rely on *Pixler v. Huff*, No. 3:11-cv-207-JHM, 2012 WL 3109492 (W.D. Ky. July 31, 2012), to support their argument that Plaintiff lacks standing to sue in its individual capacity.  Defendants contend that Plaintiff has not "suffered an injury that is separate and distinct from that which would be suffered by other members or the LLC as an entity."  *Pixler*, 2012 WL 3109492, at *3.

---

[1] "A federal court sitting in diversity applies the substantive law of the state in which it sits."  *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citation omitted).  A federal court exercising diversity jurisdiction must "follow the decisions of the state's highest court when that court has addressed the relevant issue."  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks and citation omitted).  Kentucky's substantive law governs this case because federal jurisdiction is premised on diversity.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Plaintiff counters by stating that Defendants have not shown how any of its claims fail to allege a cause of action under governing Sixth Circuit law. [DE 23 at 10]. Plaintiff alleges that Defendants stripped it of its right to participate in Konnect's business operations and unlawfully took its membership interest in Konnect. [*Id.* at 12]. Plaintiff contends that the injuries it suffered are unique to Plaintiff and its claims are therefore direct. [*Id.* at 13]. Plaintiff explains that it does not allege that Defendants' misappropriated Konnect's assets, but instead alleges that Defendants misappropriated Plaintiff's personal property — its 49 percent interest in Konnect. [*Id.*].

Because Plaintiff alleges that Defendants unlawfully took its interest in Konnect, an interest unique to Plaintiff, the Court finds that Plaintiff has shown its claims are direct. The injury alleged was suffered only by Plaintiff. As a result, Plaintiff has standing.

## B. Breach of Fiduciary Duty

### 1. Defendant Bunton

Plaintiff asserts a claim against Defendant Bunton for breach of fiduciary duty. "To state a claim for breach of fiduciary duty under Kentucky law, plaintiff must establish that the defendant owed a fiduciary duty, breached that duty, and that the breach caused damages." *Ivan Ware & Son, Inc. v. Delta Aliraq, Inc.*, No. 3:10-CV-00484-CRS, 2016 WL 868840, at *5 (W.D. Ky. Mar. 7, 2016); *see also Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 902, 916 (W.D. Ky. 2007). The manager owes fiduciary duties in a manager-managed LLC, such as Konnect. Members do not owe fiduciary duties in a manager-managed LLC. *Griffin v. Jones*, 170 F. Supp. 3d 956, 965 (W.D. Ky. 2016) (citing *Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC*, 2014 WL 2964076, at *6 (Del. Ch. June 30, 2014)); *see also Patmon v. Hobbs*, 280 S.W.3d 589, 591 (Ky. Ct. App. 2009) ("one entrusted with active corporate management, such as officer or director or manager-member, occupies fiduciary relationship").

Defendants contend that Plaintiff's breach of fiduciary duty claim against Bunton as an officer of TKTA fails because she has no duty to Plaintiff or Konnect.  [DE 17-1 at 13].  Plaintiff argues the complaint pleads facts establishing that as Konnect's 51 percent member, "Defendants' co-conspirator TKTA" was the *de facto* manager of Konnect and that Bunton as an officer of TKTA exercised significant influence over Kavanaugh, Konnect's manager.  [DE 23 at 18].

Plaintiff is a member of Konnect, a manager-managed LLC.  Bunton does not owe Plaintiff a fiduciary duty arising out of Konnect because Bunton is not a manager of Konnect.  Because there is no basis for a legal duty owed by Bunton to Plaintiff, Plaintiff has not alleged sufficient facts to support a claim for breach of fiduciary duty.  Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count I of Plaintiff's claim against Bunton for breach of fiduciary duty is **GRANTED**.

### 2. *Defendant Kavanaugh*

Plaintiff asserts that Kavanaugh breached fiduciary duties of loyalty, care, and good faith owed to Plaintiff.  Plaintiff contends that Kavanaugh owed a duty of loyalty to Konnect and its members that required her to hold as trustee for Konnect "any property, profit, opportunity, or benefit derived in the conduct" of Konnect's business or the use of Konnect's property.  [DE 1 at 28, ¶ 124].  Plaintiff also asserts that Kavanaugh's duty of care required her "to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." [*Id.* ¶ 125].

As discussed above, in Kentucky, a managing member in a member-managed LLC or a manager in a manager-managed LLC "owes fiduciary duties to other members of the limited-liability company *and* to the limited-liability company itself."  *DT GRAT JMT, LLC v. Keeney*, No. 17-101-DLB, 2017 WL 5194063, at *5 (E.D. Ky. Nov. 9, 2017) (citing *Patmon*, 280 S.W.3d

at 595 (Ky. Ct. App. 2009)); *see also Diebold v. Diebold*, 2020-CA-0051-MR, 2022 WL 3129784, at *6 (Ky. Ct. App. Aug. 5, 2022) (noting that the Kentucky Court of Appeals in *Patmon* recognized that a managing member of an LLC owes a fiduciary duty to other members and to the company in certain circumstances).  Under Kentucky law, "an LLC may waive fiduciary duties that are otherwise implied to its members in a written operating agreement."  *In re CC Operations, LLC*, 618 B.R. 471, 479 (Bankr. W.D. Ky. 2020).

The parties agree that managers of a manager-managed Kentucky LLC owe some fiduciary duties to other members of the LLC.  [DE 1 at 28; DE 17-1 at 14].  Yet the parties disagree on (a) whether the fiduciary duty of loyalty is owed only to the LLC and not its members under KRS § 275.170 and (b) whether the Operating Agreement [DE 1-1 at 14] limits any fiduciary duties owed to Plaintiff by Kavanaugh.  [*See* DE 23 at 15; DE 25 at 4–6].  The Court will address these arguments in turn.

### a.  Duty of Loyalty

Kavanaugh moves to dismiss the claim for breach of fiduciary duty of loyalty against her arguing that as the manager of Konnect, she does not owe Plaintiff a duty of loyalty under KRS § 275.170.  [DE 17-1 at 14].

KRS § 275.170 provides in relevant part:

Unless otherwise provided in a written operating agreement:

(1) With respect to any claim for breach of the duty of care, a member or manager shall not be liable, responsible, or accountable in damages or otherwise to the limited liability company or the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company unless the act or omission constitutes wanton or reckless misconduct.

(2) The duty of loyalty applicable to each member and manager shall be *to account to the limited liability company* and hold as trustee for it any profit or benefit derived by that person without the consent of more than one-half (1/2) by number of the disinterested managers, or a majority-in-interest of the members from:

(a) Any transaction connected with the conduct or winding up of the limited liability company; or

(b) Any use by the member or manager of its property, including, but not limited to, confidential or proprietary information of the limited liability company or other matters entrusted to the person as a result of his or her status as manager or member.

KRS § 275.170 (emphasis added).  Under the statutory language, the duty of loyalty is owed to the LLC itself.  *See* KRS § 275.170(2).  Thus, this statutory duty runs directly to the LLC, not to the members of the LLC.  Yet the statutory interpretation of KRS §275.170 does not conclusively answer the issue raised.

The Kentucky Supreme Court in *Pannell v. Shannon*, 425 S.W.3d 58 (Ky. 2014), discussed the application of statutory and common law doctrines with respect to LLCs.  The Kentucky Supreme Court held in relevant part,

> "'[L]imited liability companies are creatures of statute,' controlled by Kentucky Revised Statutes (KRS) Chapter 275," *Turner v. Andrew*, 413 S.W.3d 272, 275 (Ky. 2013) (quoting *Spurlock v. Begley*, 308 S.W.3d 657, 659 (Ky. 2010)), not primarily by the common law. To the extent that common law doctrines could arguably govern limited liability companies, the Kentucky Limited Liability Company Act "is in derogation of common law," KRS 275.003(1), and the traditional rule of statutory construction that "require[s] strict construction of statutes which are in derogation of common law shall not apply to its provisions." *Id.* Thus, to the extent the statutes conflict with common law, the common law is displaced.

*Pannell*, 425 S.W.3d at 68.[2]  *But see In re CC Operations, LLC*, 618 B.R. at 479 ("fiduciary duties of members and managers of a Kentucky [LLC] are exclusively set forth in KRS § 275.170").  In

---

[2] The Kentucky Supreme Court further recognized that "[b]usiness entities, as legal fictions, can only act through their agents, and the law of agency dictates when an agent or a principal is bound by a transaction and whether the agent is therefore personally liable." *Pannell*, 425 S.W.3d at 81.  "While various provisions of the Limited Liability Company Act address how the law of agency operates with respect to LLCs, to the extent the act is not inconsistent with the common law of agency, the latter still applies." *Id.*; *see also Patmon*, 280 S.W.3d at 594 ("In sum, a breach-of-loyalty claim is based on the existence of a fiduciary duty between a principal and an agent.").

8

light of the holding in *Pannell*, Kentucky's LLC Act displaces common law where the two conflict. *Pannell*, 425 S.W.3d at 68; *see also Rushing v. Flerlage Marine Co.*, No. 3:08-CV-00531-JDM, 2011 WL 4538075, at *3 (W.D. Ky. Sept. 29, 2011) ("When presented with a conflict between a statute and a common law doctrine, the Kentucky Supreme Court defers to the statute."); *James v. Churchill Downs, Inc.*, 620 S.W.2d 323, 324 (Ky. Ct. App. 1981) ("The intention to abrogate the common law will not be presumed and the intention to repeal it by statute must be clearly apparent. Repeal by implication has never been looked upon favorably by the courts." (citation omitted));; Elizabeth Penn & Manning Gilbert Warren III, *The Common Law Fiduciary Duties of Business Owners*, 58 U. Louisville L. Rev. 147, 162–63 (2019) (discussing common law fiduciary duties within business entities).

The Kentucky Court of Appeals in *Patmon v. Hobbs* addressed the issue currently before this Court of whether a manager of a manager-managed LLC owes a fiduciary duty of loyalty to the LLC *and* its members.  280 S.W.3d 589 (Ky. Ct. App. 2009).  Specifically, the Court of Appeals found "the existence of a common law duty of loyalty owed to members of a limited liability company, as well as the existence of a statutory duty, set forth in KRS [§] 275.170,[3] that requires a member to 'account to and hold as a trustee for the limited liability company any profit or benefit derived from transactions involving the use of a limited liability company's property by that member or manager without [adequate] consent[.]'" *Patmon v. Hobbs*, No. 2012-CA-001814-MR, 2014 WL 97464, at *1 (Ky. Ct. App. Jan. 10, 2014) (citing *Patmon*, 280 S.W.3d at 598).[4]

---

[3] While the Kentucky Court of Appeals in *Patmon* analyzed a previous statute, the relevant section is not materially different from the current statute.

[4] The Kentucky Court of Appeals further stated:  "Therefore, given that partners owe good faith to each other, we believe it follows logically and equitably that a managing member of a limited liability company also owes such a duty to other members (partners).  Furthermore, this standard, in combination with KRS 275.170, leads us to the conclusion that Hobbs violated the duty of loyalty, and therefore, breached his fiduciary duty to his fellow members and to the company." *Patmon*, 280 S.W.3d at 595.

Relying on *Patmon*, United States District Court Judge Thomas Russell held that a management company that managed LLCs "owed fiduciary duties of loyalty to the members of the companies it managed," and that "Kentucky law holds that an LLC's manager owes a duty of loyalty to its members." *Griffin v. Jones*, 975 F. Supp. 2d 711, 724 (W.D. Ky. 2013). Essentially, Judge Russell recognized that while the management company was "bound to act not only in the interests of the companies [and] owed them a basic duty of faithfulness and loyalty," the duties of faithfulness and loyalty extended to the members of the LLCs as well. *Id.*

Considering *Patman*, *Pannell*, and *Griffin*, it appears that Kentucky courts have determined that a manager of a manager-managed LLC owes *both* a common law fiduciary duty of loyalty and a statutory duty of loyalty (KRS § 275.170), and those common law fiduciary duties of loyalty do not conflict with KRS § 275.170.

Finally, the Court finds that Kavanaugh's reliance on *Hannah v. Mullins Fam. Funeral Home LLC*, No. 2:20-cv-00617, 2021 WL 4343950, at *7 (S.D. W.Va. Sep. 23, 2021) (interpreting Kentucky law), is misplaced. In *Hannah*, the court held that a manager member of an LLC did not owe fiduciary duties to a non-member of the LLC. This is not the issue here.

Having determined that a manager in a manager-managed LLC owes both a common law fiduciary duty of loyalty and a statutory duty of loyalty, the Court will next address how Konnect's Operating Agreement modifies these duties.

### b. Operating Agreement Section 4.5.3

Kavanaugh moves to dismiss the breach of fiduciary claims against her. She argues that Section 4.5.3 of the Operating Agreement provides that Kavanaugh, as the manager of Konnect, could not be held personally liable for breaches of the duty under the facts alleged in the complaint. [DE 25 at 7–8]. Kavanaugh maintains that even if she owed Plaintiff a common law duty of

loyalty, Section 4.5.3 of the Operating Agreement "limits the manager's personal liability to breaches of the manager's 'duty of loyalty to the Company.'"  [DE 25 at 6].

"Kentucky limited liability companies, being similar to Kentucky partnerships and corporations, impose a common-law fiduciary duty on their officers and members in the absence of contrary provisions in the limited liability company operating agreement."  *Patmon*, 280 S.W.3d at 594; *In re CC Operations, LLC*, 618 B.R. at 479 ("an LLC may waive fiduciary duties that are otherwise implied to its members in a written operating agreement").  Similarly, KRS § 275.180(1) provides that "[a] written operating agreement may . . . [e]liminate or limit the personal liability of a member or manager for monetary damages for breach of any duty provided for in KRS 275.170."  Accordingly, Konnect's Operating Agreement may eliminate or limit Kavanaugh's common law and statutory fiduciary duties provided in KRS § 275.170.

Section 4.5.3 of the Operating Agreement provides:

> To the fullest extent permitted by the Act or any successor or analogous provision thereto assuming such statute were specifically applicable to the representatives of the Management Committee, no representative of the Management Committee or officer shall be personally liable to the Company or its Members for damages for breach of any duty owed to the Company or to the Members except that this Section 4.5 shall not relieve such a Person from liability for any breach of duty based on an act or omission (i) in breach of such person's duty of loyalty to the Company, (ii) not in good faith or involving a knowing violation of law, or (iii) resulting in the receipt by such person of an improper personal benefit.

[DE 1-1 at 13].

Plaintiff pleads sufficient facts to support a claim against Kavanaugh for breach of fiduciary duty. First, a fiduciary relationship exists between Kavanaugh and Plaintiff.  The Operating Agreement waives Kavanaugh's liability for monetary damages for breach of any fiduciary duty owed to Plaintiff except for those duties breached in bad faith, involving a knowing violation of law, or resulting in an improper personal benefit.  [*Id.*].  Throughout the complaint, Plaintiff claims that

11

Kavanaugh's conduct rose to a level of wanton, willful, and malicious—bad faith. *See*, *e.g.*, [DN 1 at 27–28, 41]. Similarly, Plaintiff asserts that Kavanaugh derived an improper personal benefit as a result of her conduct. *See* [*Id.* at 43 (Plaintiff seeks disgorgement of "all distributions, profits, and economic benefits received by Kavanaugh . . . in relation to or arising out of [her] conduct")]. Thus, Plaintiff's claims of breach of fiduciary duty survive to the extent those breaches occurred in bad faith, violated the law, or resulted in an improper personal benefit.

Second, Plaintiff alleges that Kavanaugh breached these fiduciary duties by knowingly and intentionally (i) conspiring to freeze-out and drive Plaintiff out of Konnect through coerced buyout; (ii) removing Plaintiff's access to Konnect's email accounts, domain, and servers; (iii) prohibiting Plaintiff from continuing to participate in the management of Konnect's business and operations; (iv) noticing and presiding over a "sham, *ultra vires* Special Meeting" that Plaintiff contends Defendants did not have the authority under the Operating Agreement to hold and this occurred during arbitration; (v) purporting to terminate Plaintiff's membership interest in Konnect "by the contrived, pretextual bases" previously described in the complaint; and (vi) purporting to commence the process to determine the purchase price of Plaintiff's membership interest which Plaintiff further alleged that Defendants have unlawfully misappropriated. [DE 1 at 28–29, ¶ 130]. Plaintiff alleges that Kavanaugh noticed and presided over the "sham Special meeting" and caused Konnect to terminate Plaintiff's membership interest. [*Id.* at 29, ¶ 131]. Third, Plaintiff further asserts that it suffered damages a result of Kavanaugh's alleged breach. [DE 1 at 27-30]. As a result, Plaintiff has stated a claim for breach of fiduciary duty against Kavanaugh. Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count I of Plaintiff's claim against Defendant Kavanaugh for breach of fiduciary duty is **DENIED**.

### C. Aiding and Abetting Claim

Plaintiff asserts a claim against Defendants for aiding and abetting the breaches of fiduciary duties. Under Kentucky law, "[t]o prevail on a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must prove the following elements: (1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party 'substantial assistance or encouragement' in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty." *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016) (citing *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666 (6th Cir. 2010)). An underlying breach of fiduciary duty must be proven to show the first element of aiding and abetting a breach of fiduciary duty. *Miles Farm Supply*, 595 F.3d at 666. Substantial assistance "means that a defendant's conduct was a substantial factor in causing the tort." *Insight*, 514 S.W.3d at 547 (defining substantial assistance in the context of aiding and abetting a breach of fiduciary duty). Although "actual knowledge" is required, "the requisite intent and knowledge may be shown by circumstantial evidence." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F. 3d 519, 535 (6th Cir. 2000) (internal quotation marks omitted).

Defendants contend that Plaintiff's claim for aiding and abetting a breach of fiduciary duty fails because Defendants did not owe Plaintiff a fiduciary duty. [DE 17-1 at 17]. Defendants are correct that an underlying breach of fiduciary duty must be proven to show the first element of aiding and abetting a breach of fiduciary duty. *Miles Farm Supply*, 595 F.3d at 666. Having previously concluded that Bunton did not owe Plaintiff a fiduciary duty, the Court finds that Kavanaugh cannot aid and abet Bunton in a breach of fiduciary duty owed to Plaintiff.

Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count II of Plaintiff's claim against Kavanaugh for aiding and abetting is **GRANTED**.

As for Plaintiff's claim against Bunton for aiding and abetting, Plaintiff states a plausible claim that Kavanaugh breached a fiduciary duty owed to Plaintiff.  Plaintiff further contends that Bunton gave substantial assistance or encouragement to Kavanaugh, and that Bunton knew that Kavanaugh's conduct breached a fiduciary duty.  [DE 1 at 31].  Plaintiff alleges that Bunton acted pursuant to a shared understanding with Kavanaugh to "oppress Plaintiff's rights and take Plaintiff's membership interest."  [DE 23 at 21].  Plaintiff claims that both Defendants conceived and carried out a scheme to oppress Plaintiff and attempt to force Plaintiff out of Konnect.  [*Id.*].  Therefore, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a claim against Bunton for aiding and abetting Kavanaugh's alleged breach of fiduciary duty.  Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count II of Plaintiff's claim against Bunton for aiding and abetting is **DENIED**.

### D.  Tortious Interference with Contract

Plaintiff asserts a claim against Defendants for tortious interference with contract.  A party alleging tortious interference with contract must show the following six elements: "(1) the existence of a contract"; (2) the defendant's "knowledge of this contract"; (3) that the defendant "intended to cause its breach" of the contract; (4) causation; (5) that the breach at issue caused damages to the plaintiff; and (6) that the defendant "had no privilege or justification to excuse its conduct."  *Ventas, Inc. v. Health Care Prop. Investors, Inc.*, 635 F. Supp. 2d 612, 618–19 (W.D. Ky. 2009) (citing *Dennison v. Murray State Univ.*, 465 F. Supp, 2d 733, 755 (W.D. Ky. 2006)).  Furthermore, "[a]gents of a party to a contract who act within the scope of their employment cannot interfere with that party's contract."  *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. Ct. App. 2011). However, "the agent of a principal may be liable for interfering with the principal's contract, if the agent does so for his own personnel benefit."  *Rawlings v. Breit*, No. 2003-CA-

002785-MR, 2005 WL 1415356, at *2–3 (Ky. Ct. App. June 17, 2005) (citing *Cappiello v. Ragen Precision Indus., Inc.*, 471 A.2d 432 (N.J. Super. Ct. App. Div. 1984), *Stack v. Marcum*, 382 N.W.2d 743, 760 (Mich. Ct. App.1986), *Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir.1995)).

Defendants argue that Plaintiff fails to state a claim for tortious interference with contract because Plaintiff "refuses to recognize corporate formalities." [DE 17-1 at 18]. They contend that the facts asserted in Plaintiff's complaint describe actions taken by Defendants in their personal capacities. [*Id.* at 20]. Defendants state that their alleged conduct taken in their capacity as officers or agents of TKTA or as the manager of Konnect cannot support a tortious interference claim for breach of a contract. [*Id.*]. Defendants also argue the complaint does not ascribe any benefit to them individually. [DE 25 at 10].

The complaint contains sufficient factual matter, accepted as true, to state a claim for tortious interference with a contract. An Operating Agreement between Konnect, TKTA, and Plaintiff exists. [DE 1-1 at 2]. Defendants were aware of the Operating Agreement. [DE 17-1 at 7; DE 17-2 at 2]. Kavanaugh and Bunton are both officers of TKTA and Kavanaugh is the manager of Konnect. Plaintiff's complaint identifies how Defendants acting individually, maliciously, and in bad faith purposely caused TKTA and Konnect to oppress Plaintiff and violate the Operating Agreement. [DE 1-1 at 33]. Plaintiff further alleges that the actions the Defendants took were for their own personal enrichment and contradicted Konnect's best interests. [*Id.*]. Plaintiff identifies at least three independent breaches of the Operating Agreement, claims "that those breaches were the product of Defendants acting in their own personal interests," and asserts that "both Bunton and Kavanaugh personally benefited from those willful and bad-faith actions." [DE 23 at 22]. Plaintiff provides examples of Defendants' alleged conduct: freezing Plaintiff out of Konnect, preventing Plaintiff from continuing service to Toyota, diverting the Stellantis opportunity, and

stealing Plaintiff's membership interest.  [DE 1 at 31–38; DE 23 at 23].  Plaintiff also alleges that these breaches were taken outside the scope of Defendants' relationships with Konnect or TKTA. [DE 1 at 35, 37; DE 23 at 22–23].

Making all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has pleaded facts allowing a court to draw a reasonable inference that Defendants are liable for tortious interference with a contract.  Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Counts III, IV, and V of Plaintiff's claim against Defendants are **DENIED**.

### E.  Tortious Interference with Business Relations

Plaintiff alleges tortious interference with prospective business relations.  [DE 1 at 38].  To state a claim for tortious interference with prospective business relations, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy; (2) that [the defendant] was aware of this relationship or expectancy; (3) that [the defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages."  *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W. 3d 1, 6 (Ky. App. 2012) (*citing Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003)).

Defendants argue Plaintiff's claim fails because Plaintiff failed to plead a valid business relationship.  [DE 17-1 at 20].  Defendants argue the complaint fails to assert any facts regarding the likelihood of Konnect's selection for the program (the Stellantis opportunity).  [*Id.* at 21–22]. Defendants also argue without anything more specific, Plaintiff's complaint "fails to allege facts that support a claim Konnect could have reasonably expected any business relationship between Konnect and Stellantis."  [*Id.* at 22].  Defendants contend that the facts as alleged by Plaintiff in the complaint "constitute nothing more than [Plaintiff's] hope that a business relationship will come about with Stellantis."  [DE 25 at 11].

16

Plaintiff responds that the complaint contains specific factual allegations that compel the Court "to draw a reasonable inference that Defendants improperly interfered with Plaintiff's prospective business relationship regarding at least one valuable corporate opportunity." [DE 23 at 25]. Plaintiff argues that the complaint specifically alleges that Defendants' actions were taken improperly and to interfere with the expectation of a business relationship with Stellantis. [*Id.* at 26].

Plaintiff alleges that Defendants were aware of this expectancy with Stellantis. [DE 1 at 38]. Moreover, Plaintiff asserts that Defendants knowingly interfered with Konnect's expectation of a business relationship with Stellantis. [*Id.*]. The complaint further charges that Defendants caused the Stellantis opportunity to be taken by TKTA, rather than Konnect. [*Id.*]. The Court thus finds that Plaintiff has stated a claim for tortious interference with prospective business relations. Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count VI of Plaintiff's claim against Defendants is **DENIED**.

### F.  Conversion

Plaintiff asserts a claim against Defendants for the tort of conversion. The elements of conversion are as follows: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the

property. *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. App. 2014) (quoting *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).

But even if the claim satisfies all seven elements, a litigant cannot maintain a conversion claim if the conduct that gave rise to it was a simple breach of contract. *See Davis v. Siemens Med. Soln's USA*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005) (holding that there is no conversion where "the property right alleged to have been converted arises entirely from the contractual rights to compensation"); *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 525 (D. Del. 2013) ("If a plaintiff's conversion claim arises solely from a breach of contract, the general rule requires the plaintiff to sue in contract, not in tort."). "In Kentucky, a plaintiff cannot maintain a conversion claim in addition to a breach of contract claim unless [it] can establish the existence of an independent legal duty separate and apart from the contractual obligation." *Beacon Ent. Sol'ns Grp. v. MDT Labor, Inc.*, No. 3:12-cv-00759-H, 2013 WL 253134, at *4 (W.D. Ky. Jan 23, 2013) (quoting *First Const., LLC v. Gravelroad Entm't, LLC*, No. 6:07-155-DCR, 2008 WL 2038878, at *5 (E.D. Ky. May 12, 2008)) (internal quotation marks omitted). This rule prevents litigants from (1) seeking punitive damages for what is really a breach-of-contract action and (2) personally suing the officers of business entities for breaching contracts when acting on behalf of the entity. *See id.* ("[P]unitive damages are not available for a breach of contract claim."); *Duracore Pty Ltd. v. Applied Concrete Tech. Inc.*, No. 5:13-CV-184-TBR, 2016 WL 3620793, at *5–6 (W.D. Ky. June 28, 2016). In *Kyle*, a minority member of an LLC sued the majority member for conversion after he was involuntarily removed as a member, allegedly in violation of the operating agreement. *Kyle*, 987 F. Supp. 2d at 525. The court granted summary judgment for the majority member because all the actions it took to remove the minority member from the LLC were "issues [] covered by the Operating Agreement," so the minority member was really suing for breach of contract. *Id.*

Plaintiff alleges that Defendants "converted" its membership interest in Konnect and its accompanying rights by trumping up causes for its removal, voting to terminate Plaintiff's interest at the "sham Special Meeting" without presenting any evidence of "substantial deviations," and refusing Plaintiff's requests for mediation.  [DE 1 at 10–12, 14, 24].  Essentially, Plaintiff claims that Defendants removed it from Konnect and caused it economic damages by violating sections 12 and 15 of their contract, the Operating Agreement.  [*See id.* at 10–12, 14, 24, 39–40; DE 1-1 at 20, 22–23].  It does not allege that Defendants violated any legal duties other than those the Operating Agreement required them (or, more accurately, the company they acted for) to perform. *See Beacon*, 2013 WL 253134, at *4.  As in *Kyle*, where the court granted summary judgment to the majority member because every action he took to remove the minority member was covered by the operating agreement, everything that Plaintiff alleges led to its improper removal as a Konnect member is covered by the Konnect Operating Agreement.  *See Kyle*, 987 F. Supp. 2d at 525; [DE 1-1 at 20, 22–23].  While, unlike in *Beacon*, Plaintiff did not claim breach of contract, it did claim breach of contract in its arbitration action against TKTA.  [DE 1 at 3].  By its own admission, the only reason it did not bring its conversion claim in that action is because Defendants could not be joined in it.  [*See* DE 23 at n.1].  The Court does not think this case's unique procedural history warrants not applying *Beacon's* rule.  The *Beacon* plaintiff was disallowed from claiming both breach of contract and conversion because it failed to show that the defendant violated a legal duty aside from breaching the contract, Plaintiff cannot maintain its conversion claim here for the same reason.  *Beacon*, 2013 WL 253134, at *4.

Plaintiff argues that its conversion claim is proper because (1) its membership interest in Konnect arises from the company's Articles of Organization, not the Operating Agreement, and (2) Kentucky law supports claims for conversion of ownership interests in business entities.  [DE

23 at 26–27]; *see Wood v. Commonwealth*, 17 S.W.2d 443, 444–45 (Ky. 1929) (affirming criminal conviction for converting stock certificate because certificate represented the stock, a "thing of value" that could be converted).  It is correct on both counts, but that is ultimately immaterial. Litigants are not allowed to shoehorn a conversion claim into what is essentially a straightforward breach-of-contract action, even if that breach caused it to lose property that is convertible under Kentucky law and was created by something other than the contract.  *See Beacon*, 2013 WL 253134, at *4; *Kyle*, 987 F. Supp. 2d at 525; *Davis*, 399 F. Supp. 2d at 801.

Defendants' Motion to Dismiss [DE 17] as it relates to Count VII of Plaintiff's claim against Defendants is **GRANTED**.

### G.  Civil Conspiracy

Plaintiff asserts a claim against Defendants for civil conspiracy.  A claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)) (internal quotation marks omitted).  "[T]he elements of a civil conspiracy are: 1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal." *Brown v. Student Loan Xpress, Inc.*, No. 5:11-CV-00090-TBR, 2012 WL 1029467, at *9 (W.D. Ky. Mar. 26, 2012).

Defendants argue that Plaintiff fails to state a claim for civil conspiracy because an LLC cannot conspire with its agents.  [DE 17-1 at 24].  Defendants contend that Plaintiff has failed to plead the essential element that multiple persons entered into an agreement.  [*Id.* at 25]. Defendants maintain that under the intracorporate conspiracy doctrine they could not enter into a

conspiracy because they were both acting on behalf of one entity, TKTA, as agents in the scope of their employment. [*Id.*]. And therefore, the requisite number of persons for a conspiracy does not exist. [*Id.*].

"The intra-corporate conspiracy doctrine states that 'a corporation cannot conspire with its own agents or employees' because the corporation and its employees 'are members of the same collective entity' and so 'there are not two separate 'people' to form a conspiracy.'" *Mills v. Woodford Nat. Bank*, No. 3:14-CV-00639-TBR, 2015 WL 1136502, at *2 (W.D. Ky. Mar. 12, 2015) (quoting *McGee v. Cont'l Mills, Inc.*, No. 5:09-cv-00155-R, 2009 WL 4825010, at *2 (W.D. Ky. Dec. 11, 2009)). However, where employees act outside the course of their employment, the intra-corporate conspiracy doctrine does not bar a plaintiff's claim. *See Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 641 (E.D. Ky. 2012).

Here, Plaintiff alleges facts indicating that Defendants acted outside the scope of their duties as employees or agents of TKTA and Konnect. For example, Plaintiff contends that Defendants acted individually and in concert to unlawfully freeze-out Plaintiff from its membership in Konnect and to usurp and misappropriate the Stellantis opportunity. [DE 1 at 40]. *See Konica Minolta Bus. Sols, USA., Inc. v. Lowery Corp.*, No. 15-11254-VAR, 2016 WL 6828472, at *7 (E.D. Mich. Nov. 18, 2016) ("nothing in the complaint shows that all of the individual defendants' actions were *indisputably* within the scope of their employment with Applied Imaging, such that the intra-corporate conspiracy doctrine applies as a matter of law." (emphasis in original)). Because Plaintiff has alleged that Defendants acted outside the course of their employment, the intra-corporate conspiracy doctrine does not bar Plaintiff's claim. *Crestwood Farm*, 864 F. Supp. 2d at 641. Furthermore, as noted by the District Court in *Konica*, the intra-corporate conspiracy doctrine is a defense. *Konica*, 2016 WL 6828472, at *7. Therefore,

Plaintiff need not plead that the individual defendants' acts were outside the scope of their employment.  [*Id.*].  Defendants may raise this issue again after discovery.

Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count VIII of Plaintiff's claim against Defendants is **DENIED**.

### H.  Declaratory Judgment

Plaintiff seeks a declaration that "Kavanaugh is not entitled to indemnification pursuant to Section 4.5.3 of the Operating Agreement."  [DE 1 at 43].  Defendants argue that Plaintiff cannot obtain a declaratory judgment because this Court does not have jurisdiction over matters pursuant to KRS § 418.040 and because Plaintiff seeks a declaration of rights under the Operating Agreement based on claims that are otherwise pending in this action.  [DE 17-1 at 25–26].  In contrast, Plaintiff argues that this Court has jurisdiction over the parties and the complaint's subject matter.  [DE 23 at 31].

First, KRS § 418.040 does not govern a declaratory relief action in federal court.  Instead, federal standards apply because the Kentucky declaratory judgment statute is procedural in nature.  "Declaratory judgment acts are procedural rules; therefore, in a diversity case, the Federal Declaratory Judgment Act applies."  *Nationwide Mut. Fire Ins. Co. v. Creech*, 431 F. Supp. 2d 710, 712 n.1 (E.D. Ky. 2006) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  Although Plaintiff cites to the Kentucky Declaratory Judgment Act, KRS § 418.040, in its complaint, this Court will consider Plaintiff's request for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *Id.*

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a)[5].  While the

---

[5] The Act does not provide an independent basis for subject matter jurisdiction.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  Thus,

Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). A court considers five factors ("*Grand Trunk* factors") to determine whether the existence of Declaratory Judgment Act jurisdiction is proper:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W.R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Here, these factors weigh in favor of exercising jurisdiction over this declaratory action. The action would both settle the controversy and clarify the legal relations regarding whether indemnification of Kavanaugh is appropriate. *See State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 251 (6th Cir. 1986) (Merritt, J., dissenting) ("Such actions require two courts rather than one to address the same basic issues and tend to increase the legal fees of the parties and the time it takes to resolve the underlying dispute."); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986) ("Such actions … should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata*

---

an action brought under the Declaratory Judgment Act must invoke an independent basis for federal jurisdiction. Here, the independent basis for subject matter jurisdiction is diversity.

are created*."); Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 791 (E.D. Ky. 2008).

Because no other pending cases exist against Kavanaugh, nothing suggests any procedural fencing on the part of Plaintiff.  Similarly, the use of a declaratory action to determine whether indemnification of Kavanaugh is proper will not increase friction between federal and state courts as both courts can interpret the language of Operating Agreement, no novel issues of Kentucky law exist, and there is no state court action pending against Kavanaugh.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 559–561 (6th Cir. 2008).  Finally, the declaratory remedy sought in the present case is the most effective remedy since this Court is addressing the tort claims asserted against Kavanaugh.  *Manley*, 791 F.2d at 463.

Second, the Court rejects Defendants' argument that a declaratory judgment action is not properly instituted in the present case because Plaintiff seeks a determination of rights under the Operating Agreement Section 4.5.4[6] which involves claims that are pending in this action.  [DE 17-1 at 26 (citing *Mammoth Med., Inc. v. Bunnell*, 265 S.W.3d 205, 210 (Ky. 2008) ("an action

---

[1] Section 4.5.4 of the Operating Agreement provides:

> Unless otherwise prohibited by law, the Company shall indemnify and hold harmless the members of the Management Committee, the Members, their respective agents, officers, directors, and employees, the Company's officers and the respective successors of all such Persons (individually, an "Indemnitee") from any claim, loss, expense, liability, action or damage resulting from any act or omission performed by or on behalf of or omitted by the Indemnitee in its capacity as member of the Management Committee or a Member or an officer, including, without limitation, reasonable costs and expenses of its attorneys engaged in defense of any such act or omission; provided, however, that the Indemnitees shall not be indemnified or held harmless for any act or omission that is in violation of any of the provisions of this Agreement or that constitutes fraud, gross negligence or willful misconduct. Any indemnification pursuant to this Section 4.5.4 shall be made only out of the assets of the Company.

[DE 1-1 at 14].

for a declaratory judgment cannot be instituted to secure a determination of substantive rights involved in a pending suit")].

Section 4.5.4 of the Operating Agreement provides in relevant part: "the Indemnitees shall not be indemnified or held harmless for any act or omission that is in violation of any of the provisions of this Agreement or that constitutes fraud, gross negligence or willful misconduct." [DE 1-1 at 14].  Plaintiff alleges that Defendant Kavanaugh's conduct violated the terms of the Operating Agreement and was fraudulent, grossly negligent, or willful.  [DE 1 at 41].  Plaintiff states that it reasonably expects Kavanaugh to assert rights to indemnification pursuant to Section 4.5.4 of the Operating Agreement in connection with her alleged tortious conduct.  [*Id.*].  Thus, Plaintiff requests the Court to declare that Kavanaugh is not entitled to indemnification pursuant to Section 4.5.4. of the Operating Agreement.

Contrary to Kavanaugh's argument, the declaratory relief sought does not infringe on any other claims asserted in this case: breach of fiduciary duty, tortious interference with contract, tortious interference with business relations, conversion, or civil conspiracy.  Whether the Operating Agreement's indemnification provision protects Kavanaugh from monetary damages is an independent issue from whether Kavanaugh committed the alleged torts.

Therefore, Defendants' Motion to Dismiss [DE 17] as it relates to Count IX of Plaintiff's claim against Defendants is **DENIED**.

## I.   Punitive Damages and Injunctive Relief

Finally, Counts X for punitive damages and Count XI for temporary and permanent injunctive relief specify remedies.  While they are pleaded as separate counts, the parties agree that they are not independent causes of action.  [DE 17-1 at 26-27; DE 23 at 31–32]; *see Crump v. State Farm Mut. Auto. Ins. Co.*, No. 5:21-229-DCR, 2021 WL 5450448, at *16 (E.D. Ky. Nov. 22,

2021); *Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260 (6th Cir. 2018). As such, Plaintiff's causes of action for punitive damages and injunctive relief will be dismissed inasmuch as such claims are not appropriately asserted as an independent count in a complaint. Notwithstanding, "Plaintiff may still recover punitive damages [or obtain injunctive relief] should the evidence support such a finding." *Archey v. AT&T Mobility, LLC*, No. 17-91-DLB-CJS, 2017 WL 6614106, at *4 (E.D. Ky. Dec. 26, 2017). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss [DE 17] as to these two counts.

## IV.   CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendants' Motion to Dismiss [DE 17] regarding Count I is **GRANTED** with respect to the claim against Bunton and is **DENIED** with respect to the claim against Kavanaugh;

(2) Defendants' Motion to Dismiss [DE 17] regarding Count II is **GRANTED** with respect to the claim against Kavanaugh and **DENIED** with respect to the claim against Bunton;

(3) Defendants' Motion to Dismiss [DE 17] regarding Counts III, IV, and V is **DENIED**;

(4) Defendants' Motion to Dismiss [DE 17] as it relates to Count VI is **DENIED**;

(5) Defendants' Motion to Dismiss [DE 17] as it relates to Count VII is **GRANTED**;

(6) Defendants' Motion to Dismiss [DE 17] as it relates to Count VIII is **DENIED**;

(7) Defendants' Motion to Dismiss [DE 17] as it relates to Count IX is **DENIED**;

(8) Defendants' Motion to Dismiss [DE 17] as it relates to Counts X and XI is **GRANTED**;

(9) The Court will issue a separate order referring the case for Rule 16 conference.

Rebecca Grady Jennings, District Judge

United States District Court

March 13, 2023

Copies to:      Counsel of record