**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:22-CV-00004-RGJ-CHL**

**BRUNSWICK TKTKONNECT, LLC,**                                                              **Plaintiff,**

**v.**

**SHEILA KAVANAUGH, et al.,**                                                              **Defendants.**

**MEMORANDUM OPINION & ORDER**

Before the Court is the Motion to Stay Proceedings Pending Arbitration filed by Defendants Sheila Kavanaugh and Kimberly Bunton. (DN 32.) Plaintiff Brunswick TKTKonnect, LLC filed a response (DN 35), to which Defendants filed a reply (DN 36). Therefore, the motion is ripe for review.

**I.      BACKGROUND**

Plaintiff Brunswick TKTKonnect, LLC filed this suit alleging that Defendants Sheila Kavanaugh and Kimberly Bunton violated Plaintiff's rights as a Member of non-party TKTKonnect, LLC (the "Company"). (DN 1.) Defendant Kavanaugh is the Manager of the Company, and she and Defendant Bunton are officers of the Company's majority Member, non-party TKT & Associates, Inc. ("TKTA") (*Id.* at 1.) Specifically, Plaintiff alleges that TKTA and Defendants froze Plaintiff out of the Company's daily operations and financial affairs, misappropriated Company opportunities, and purported to terminate and expel Plaintiff's membership interest in the Company through unauthorized means. (*Id.*)

Plaintiff first commenced arbitration (the "Arbitration") against TKTA and Defendants pursuant to an arbitration agreement between the Members of the Company. (DN 32 at 334.) Defendants objected to participating in the Arbitration in their individual capacities, asserting they could not be compelled to arbitrate as non-signatories to the arbitration agreement. (*Id.*) In response, Plaintiff amended its complaint in the Arbitration to bring claims solely against TKTA. (*See* DN 32-2.) Approximately two months after the Arbitration commenced, on January 4, 2022, Plaintiff brought the instant action (the "Action") against the individual Defendants, asserting claims based on the same or similar operative facts as in the Arbitration. (*See* DNs 1, 32-2.) The Arbitration and the Action are proceeding simultaneously. Discovery in the

Arbitration has progressed whereas discovery in the Action has not yet commenced, and no scheduling order has been entered in the Action. (*Id.*) On March 13, 2023, District Judge Rebecca G. Jennings granted in part and denied in part Defendants' motion to dismiss. (*See* DNs 17, 27.)

Defendants now move for a stay of proceedings in the Action pending the outcome of the Arbitration. (DN 32.) In support of the motion, Defendants asserts that allowing both the Action and the Arbitration to proceed simultaneously would result in "an unnecessary waste of resources and present the real possibility of inconsistent rulings" given that the operable facts in both are "interwoven and inseparable." (*Id.* at 341-42.) Plaintiff opposes the motion, arguing that Defendants failed to meet their burden to demonstrate that the stay is warranted and asserting that a stay of the Action would cause prejudice to Plaintiff. (*See* DN 35.)

## II.     LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Court may issue a discretionary stay for claims against non-signatories pending the outcome of arbitration between the parties to an arbitration agreement. *Vaughn v. Marshall,* No. C2: 2:09 CV 00097, 2009 WL 3260382 at *2 (S.D. Ohio 2009) (citing *Asahi Glass Go., Ltd. V. Toledo Eng'g Co., Inc.,* 262 F.Supp.2d 839, 844 (N.D. Ohio 2003). However, "courts must 'tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay.'" *Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* (quoting *Landis*, 299 U.S. at 255).

The Sixth Circuit explains that "[w]hile no precise test has been developed to guide district courts in deciding whether to grant requested stays, courts have noted a number of relevant considerations" with "[t]he most important consideration [being] the balance of hardship." *IBEW, Local 2020 v. AT&T Network Sys.*, No. 88-3895, 1989 WL 78212, at *8 (6th Cir. July 17, 1989) (citing *Landis*, 299 U.S. at 255 (1936); *Ohio Envtl. Council*, 565 F.2d at 396.) "[T]he moving party has the burden of proving that it will suffer

irreparable injury if the case moves forward, and that the non-moving party will not be injured by the stay." *Id.* The moving party must show "there is a pressing need for delay, and that neither the other party nor the public will suffer harm from the stay." *Ohio Envtl. Council*, 565 F.2d at 396. If there is even a "fair possibility" that the stay will harm the non-moving litigant, the movant must then "make out a clear case of hardship or inequity" to go forward. *Id.* "[A] stay should not be for an 'indefinite duration in the absence of a pressing need.'" *Elridge v. Cabela's Inc.,* No. 3:16-CV-536-DJH, 2017 WL 4364205, at *2 (W.D. Ky. Sept. 29, 2017) (quoting *Landis,* 299 U.S. at 355). In addition to the balance of hardships, courts commonly consider "the potential harm to the public, and judicial economy and efficiency" when granting a stay. *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 591 F. Supp. 3d 205, 211 (W.D. Ky. 2022) (citing *Caudill v. Wells Fargo Home Mortg., Inc.*, No. 5:16-066-DCR, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (citing *IBEW*, 1989 WL 78212 at *8).

**III.     DISCUSSION**

Defendants' motion puts forth little in the way of showing undue hardship or inequity, and rests almost entirely on the notion that judicial economy warrants a stay of proceedings. Defendants assert that the resources and efforts of Defendants, Plaintiffs, and TKTA to advance the Arbitration will be "needlessly duplicated" if the Action proceeds to discovery due to the risk of inconsistent verdicts. (DN 32 at 341.) First, TKTA is not a party to the Action and its efforts do not weigh in the balancing of hardships. Second, Plaintiff counters that the progress of discovery in the Arbitration may facilitate discovery in the Action. (DN 35 at 408.) The parties to the Arbitration have exchanged written discovery, produced documents, and are processing electronically-stored information. (*Id*.) Given that the operable facts of both proceedings are the same or similar, the progress of discovery in Arbitration may reduce the need for discovery in the Action. Defendants have not argued otherwise or stated a need for individualized discovery for the claims in the Action. As Plaintiff correctly contends, Defendants concerns are unfounded as the Court may still manage discovery in the Action to avoid duplication of efforts. The Parties may also avail themselves to fast-tracking discovery by agreement at any time, especially while the Action is nascent and based on Defendants' assertion that the proceedings are intertwined and inextricable.

3

Defendants argue that because Plaintiff seeks identical relief in both actions, Plaintiff shall not suffer any harm and the heightened risk of inconsistent verdicts "outweigh[s] any concerns on Plaintiff's part that the resolution of its claims may be prolonged." (DN 32 at 341.) Defendant also suggests that Plaintiff will suffer harm retroactively if its efforts in the Arbitration are duplicated in the Action. (*Id.* at 341-42.) While this is not a factor in the Court's determination, there is no reason to believe that Plaintiff did not account for such a risk at the outset of this litigation. Plaintiff cannot be prejudiced by its own decision to litigate the Action simultaneously with the Arbitration just as Plaintiff "should have expected to expend time, effort, and resources" in bringing this suit. *EMW Women's Surgical Ctr.*, 591 F. Supp. at 212. More importantly, the possibility that Plaintiff may suffer retroactive harm directly undermines Defendants' position. Harm to Plaintiff supports the denial of a stay. After all, Defendants will not be duplicating efforts as they are not parties to the Arbitration. Defendants' concerns regarding TKTA are meritless. As Plaintiff assumed the risks of its strategic choices, Defendants likewise assumed the risk in their own decision to leave TKTA behind in the Arbitration.

In contrast, Plaintiff opposes the stay because it seeks to prosecute the remaining causes of action against Defendants without undue delay. (DN 35 at 404; *see also* DN 270.) Plaintiff states that this Action commenced largely due to Defendants' unwillingness to consolidate the claims in Arbitration and that it cost Plaintiff "tens of thousands of dollars" to litigate this Action. (*Id.* at 404.) Strategic choices are unpersuasive as a basis for hardship as discussed above. However, the indefinite duration of the stay presents a fair possibility of interfering with Plaintiff's right to a determination without undue delay and to "pursue each wrongdoer separately until it receives full satisfaction[.]" *RMF Nooter, Inc. v. Gleeson Constructors, LLC*, No. 1:06-CV-298, 2006 WL 3290126, at *8 (W.D. Mich. Nov. 13, 2006). Defendants assert that the Arbitration "has progressed significantly" in comparison to the Action, but that progress has been an eighteen-month long endeavor and discovery is not yet complete. (DN 32 at 336.) The facts that remain are that Plaintiff's claims have survived dismissal and cannot be brought elsewhere considering the gates to resolution through Arbitration were closed by Defendants, and delay has already occurred. Rather than delay determination of this dispute further, the Court finds that permitting the Action to continue may

4

likely narrow the issues and stimulate negotiations for case resolution with less risk of duplication and waste to Plaintiff and the Court.

The alleged harm to Defendants and to judicial economy is similarly unpersuasive as it relates to the risk of inconsistent rulings. For example, Defendants state that should the arbitrator find that TKTA was not in breach of the Operating Agreement, it would be wholly inconsistent if the Court should find that the Defendants tortiously interfered with the contract by causing TKTA to breach it. (DN 32 at 340.) Likewise, Defendants propose that if the arbitrator ruled favorably on Plaintiff's declaratory relief regarding its membership in the Company, such a ruling would impact Plaintiff's standing, which this Court determined is directly related to misappropriation of "Plaintiff's personal property—its 49 percent interest in [the Company]." (*Id.*; *see also* DN 27 at 5.) Given these potential outcomes, the absence of a discretionary stay would make it "impossible for Defendants to proceed in this forum without adversely affecting TKTA's right to arbitrate," not to mention cause "unnecessary waste" for all involved (DN 32 at 340-41.) Although judicial economy is a relevant factor in the Court's determination, it is not sufficient as a standalone ground to grant Defendants' motion, "especially given that prejudice to the non-movant is the most important consideration." *Eldridge,* 2017 WL 4364205 at *4 ("Any stay would be indefinite and solely in the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay pending a similar proceeding.'") (quoting *Mancini v. JPMorgan Chase Bank, N.A.*, No. 1:15-cv-61524-UU, 2016 WL 1273185, at * 1 (S.D. Fla. Mar. 28, 2016) (citing *Landis*, 299 U.S. at 257).

Defendants' reliance on *Kirsh* and *Harvey* to support their reasoning is misplaced. *See Kirsch v. Dean,* No. 3:16CV-00299-CRS, 2017 WL 7000276 (W.D. Ky. April 3, 2017)*; see also Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000). Defendants contend that when a party files a motion to compel arbitration and the district court concludes that some, but not all, of the claims are subject to arbitration, the court "must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). This mandatory stay stems from a provision of the Federal Arbitration Act ("FAA") and is the fourth prong of a four-part analysis applicable to motions to compel

5

arbitration brought pursuant to the FAA. *Id.* at 715 ("[w]hen considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and *fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must be determine whether to stay the remainder of the proceedings pending arbitration*"); *see also* 9 U.S.C. § 3. (emphasis added). In *Kirsch,* the parties were signatories to an agreement to arbitrate, which triggered application of the FAA. *Kirsch,* at *1. The Defendants here are non-signatories to the Arbitration. In *Harvey,* the Fifth Circuit "diverged from [its] general rule requiring party status for [application of] the mandatory stay provision" when it applied the FAA's mandatory stay provision to non-signatories in *Harvey*, thereby "creating tension" in Fifth Circuit case law. *Adams v. Georgia Gulf Corp.,* 237 F.3d 538, 540-41 (5th Cir. 2001). *Harvey* was an "exceptional circumstance[]" in the Fifth Circuit as the mandatory stay provision would not ordinarily extend to non-signatories. *Id.* Defendants also briefly advocate for application of a four-factor test set forth in *Higgins,* which is applied by some Sixth Circuit courts to determine whether a discretionary stay is warranted and which considers: "[(1)] the potentiality of another case having a dispositive effect on the case to be stayed, [(2)] the judicial economy to be saved by waiting on a dispositive decision, [(3)] the public welfare, and [(4)] the hardship/prejudice to the party opposing the stay, given its duration." *Higgins v. BAC Home Loans Servicing, LP*, No. 5:12-CV-183-KKC, 2012 WL 5332476, at *2 (E.D. Ky. Oct. 29, 2012). However, the Northern District of Ohio "[gave] shape to th[e] balancing test" in *Higgins,* which in turn stemmed from law in the Eighth and Seventh Circuits pertaining motions to compel arbitration invoking the FAA. *See Hickman v. First American Title Ins. Co.*, No.: 1:07 CV 1543, 2010 WL 11565405 at *2 (N.D. Ohio Aug. 4, 2010); *see also Geo Vantage of Ohio, LLC v. GeoVantage, Inc.*, 2:05-CV-1145, 2006 WL 2583379, at *12 (S.D. Ohio Sept. 6. 2006) ("The circuit courts of appeal take different approaches in the application of 9 U.S.C § 3 [of the FAA]. . . Within the Sixth Circuit, the District Court for the Northern District of Ohio has followed the law of Eighth and Seventh

6

Circuits on this matter") (quoting *Asahi Glass Co. v. Toledo Eng'g Co.*, 262 F.Supp.2d 839, 844 (N.D. Ohio 2003).

Defendants argue that the analysis for motions to compel arbitration are applicable here because "the parties find themselves in the same position as one where a plaintiff commenced its action in federal court and defendants later sought to compel arbitration of certain claims." (*Id.* at 338.) Defendants, however, overlook a critical factor: the instant motion does not invoke the FAA, which is the basis for that analysis, and cannot do so due to Defendants' own strategic choices, which Defendants readily admit. This Action has not merely progressed in "the opposite manner" but is a different matter altogether procedurally. Plaintiff brought this Action explicitly to avoid compelling Defendants to arbitration. (*See* DN 35 at 405.) This is distinguishable from proceedings in which defendants move to compel arbitration at the outset of the litigation. Staying the Action would not further the "federal policy in favor of arbitration" at the core of Defendants' cases seeing as arbitration of the claims in the Action is not an option here. *Harvey*, 199 F.3d at 795-97. Applying this reasoning would be inconsistent as Defendants are not seeking a mandatory stay pursuant to the FAA but a discretionary stay within the Court's inherent authority, which places harm to Plaintiff and pressing need for delay for Defendants above the risks associated with inconsistent verdicts. Defendants fail to provide a legal justification as to why the Court should weigh judicial waste or TKTA's rights over the balance of hardships. The Court will also note that Defendants criticized certain arguments in Plaintiff's response for being predicated on cases that pertain to motions to compel arbitration rather than motions to stay proceedings. (*Id.* at 428.) Yet Defendants appear to have no reservations doing the same. Defendants ask the Court to apply the rationale of a motion to compel arbitration to its motion to stay proceedings as though the considerations and circumstances underlying both were one in the same. The Court will not do so.

Defendants have not met their burden to show an absence of harm to Plaintiff nor prove to the Court that Defendants have a pressing need for an indefinite stay. An indefinite stay would harm Plaintiff's ability to pursue its claims against Defendants in this Action that it can no longer pursue through Arbitration. Any harm relating to waste of the Parties' resources is the result of the Parties' strategic decision-making.

Meanwhile, the Arbitration has been pending for eighteen months and the Action has been pending for nearly a year. Judicial economy can be better served by ensuring that progress in the Action is not arrested or unduly delayed by another proceeding without a showing of pressing need or irreparable injury to Defendants while a fair possibility of harm to Plaintiff's rights exists. While the Arbitration may have some dispositive effect on the claims pending in the Action, this may be cause enough to encourage negotiation and narrow the issues before the Parties expend any further efforts. And should the Parties engage in discovery, the Parties may still avail themselves to opportunities to fast-track discovery by way of agreement or Court administration. The Court finds that the case "being stalled in the Court's docket for an indefinite period" does not support judicial economy and efficiency and that the balance of hardships weighs in favor of Plaintiff. *EMW Women's Surgical Ctr.,* 591 F. Supp. 3d at 214. Therefore, Defendants' motion is denied.

## IV.   ORDER

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' Motion to Stay Proceedings Pending Arbitration (DN 32) is **DENIED**.

Colin H Lindsay, Magistrate Judge
United States District Court

December 8, 2023

cc:   Counsel of record