UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRUNSWICK TKTKONNECT, LLC                                          Plaintiff

v.                                                    Case No. 3:22-cv-4-RGJ-CHL

SHEILA P. KAVANAUGH
and KIMBERLY BUNTON                                             Defendants

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendants Sheila P. Kavanaugh ("Kavanaugh") and Kimberly Bunton ("Bunton") move to dismiss Counts V and VI of the amended complaint. [DE 49]. Plaintiff Brunswick TKTKonnect, LLC ("Brunswick") responded.[1] [DE 62]. Kavanaugh and Bunton replied. [DE 70]. For the following reasons, Kavanaugh's and Bunton's motion [DE 49] is **GRANTED**.

## I. BACKGROUND[2]

This case is a dispute over control of nonparty TKTKonnect, LLC ("TKTKonnect"), a Kentucky limited liability company ("LLC"). [DE 47 at 567]. TKTKonnect is a managed-services provider ("MSP") primarily serving the automotive industry. [*Id.* at 568]. Automotive companies use MSPs to "leverage an outsourced, subcontracted, and tiered supply chain model." [*Id.*]. TKTKonnect is "woman and minority owned." [*Id.*].

---

[1] Brunswick's response brief does not comply with the Court's page limit. *See* LR 7.1(d). Previously, the Court granted Brunswick leave to exceed the page limit in responding to Kavanaugh's and Bunton's motion to dismiss the original complaint. [DE 26]. But no such request was made regarding the instant motion.

[2] In its review of a motion to dismiss, "a district court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Smith v. Silvernail*, No. 24-3187, 2025 WL 80370, at *4 (6th Cir. Jan. 13, 2025) (quoting *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citation and quotation marks omitted)). As a result, the factual information from Brunswick's amended complaint is taken as true for purposes of the Court's review of Kavanaugh's and Bunton's motion to dismiss Counts V and VI.

TKTKonnect has two members: TKT & Associates, Inc. ("TKTA") and Brunswick. [*Id.* at 567]. Their membership interests are 51% and 49% respectively. [*Id.*]. Kavanaugh and Bunton control TKTA and, because of its controlling interest, TKTKonnect as well. [*Id.*]. Kavanaugh is TKTKonnect's manager. [*Id.* at 563]. "Bunton . . . became associated with [TKTKonnect] in 2021" and, despite having "no official position," "has exerted significant influence and control over Kavanaugh's decision-making." [*Id.* at 567, 573]. Bunton is also TKTA's president. [*Id.* at 573]. Brunswick has two members, Michael Rose and Randy Jones. [*Id.* at 566].

According to the amended complaint, Rose, Jones, and Kavanaugh's daughter "built" TKTKonnect in 2015. [*Id.* at 567]. Kavanaugh and Bunton were not involved. [*Id.* at 568]. Brunswick and TKTA, as TKTKonnect's member–entities, were to run the business together. [*Id.* at 570–71]. When TKTKonnect secured a major contract in 2016 to provide Toyota with managed personnel services, it was Brunswick that brought the "expertise" Toyota wanted. [*Id.* at 569, 571]. Beginning in 2017, TKTKonnect also sought a business relationship with Stellantis.[3] [*Id.* at 579]. After initially failing to secure a Stellantis contract, TKTKonnect "made the strategic decision to broaden its client offerings" to include, among other things, "media buys." [*Id.* at 581].

When Kavanaugh's daughter passed away in 2020, Bunton succeeded her as TKTA's president. [*Id.* at 568, 573]. That same year, Rose and Bunton met regularly with Stellantis pursuant to an initiative developed for "small, minority-owned businesses" like TKTKonnect. [*Id.* at 583]. TKTKonnect continued pursuing opportunities with Stellantis and also pursued additional opportunities with Toyota. [*Id.* at 583–84].

In June 2021, TKTA's and Brunswick's representatives met for dinner. [*Id.* at 573]. There, TKTA offered to buy out Brunswick's interest in TKTKonnect. [*Id.*]. Brunswick alleges that when

---

[3] Stellantis's brands include Alfa Romeo, Chrysler, Dodge, Fiat, Jeep, and Ram. [DE 47 at 594–95].

2

it declined to sell, TKTA began a "transparent campaign" to "expel" Brunswick from TKTKonnect by asserting that it had defaulted under TKTKonnect's operating agreement. [*Id.*]. Kavanaugh prohibited Rose and Jones from communicating with Toyota, and TKTA terminated Rose's and Jones's access to TKTKonnect's email and computer systems. [*Id.* at 575]. Through these actions, TKTA "purposely concealed" from Brunswick a business opportunity with Stellantis. [*Id.* at 585]. Eventually, TKTA secured a marketing engagement with Stellantis. [*Id.* at 594–95].

In November 2021, TKTA notified Brunswick that a special meeting would be called to address eliminating Brunswick's membership interest in TKTKonnect. [*Id.* at 588]. The meeting took place several days later. [*Id.* at 591]. As a result of the special meeting, Brunswick's membership was terminated "for cause." [*Id.* at 593–94].

Brunswick first initiated mediation per TKTKonnect's operating agreement. [*Id.* at 579]. When no agreement was reached, Brunswick initiated arbitration against TKTA, Kavanaugh, and Bunton. [*Id.* at 579, 589]. Because Kavanaugh and Bunton were not themselves parties to TKTKonnect's operating agreement, they objected to the tribunal's jurisdiction over them. [DE 35-1]. Brunswick responded by dropping them from arbitration and naming them as the defendants in this case. [DE 32-2]. In arbitration, which is ongoing, Brunswick maintains both "individual and derivative causes of action against TKTA." [DE 47 at 566].

Brunswick initiated this case in January 2022. [DE 1]. Kavanaugh and Bunton moved to dismiss the original complaint. [DE 17]. That motion argued, among other things, that Brunswick lacked standing to bring its claims because the alleged injuries were TKTKonnect's rather than Brunswick's. [DE 17-1 at 145–47]. On that point, the motion was denied. [DE 27 at 249]. The Court held that Brunswick had direct claims for Kavanaugh's and Bunton's alleged unlawful termination of Brunswick's interest in TKTKonnect, an injury that was unique to Brunswick. [*Id.*].

The Court also rejected Kavanaugh's and Bunton's arguments that Brunswick had failed to state claims for tortious interference. [*Id.* at 258–61]. Some other claims were dismissed. [*Id.* at 270].

The Court permitted Brunswick to amend its complaint in May 2024. [DE 46]. The amended complaint asserts claims for breach of fiduciary duties (Counts I–II), tortious interference (Counts III–VI), civil conspiracy (VII) and declaratory judgment (VIII). [DE 47 at 596–611]. According to Brunswick, the amended complaint does not assert any new causes of action; it "simply seeks additional relief." [DE 62 at 721]. Relevant here, "recently disclosed facts" have been added to the tortious interference claims in Counts V and VI. [*Id.*]. Count V (Tortious Interference with Contract) alleges that

> By pursuing and converting the Stellantis Opportunity and by participating in the Stellantis-NBL Program, and by pursuing, converting, and performing the Stellantis Marketing Engagement, TKTA competed, and is competing, directly with the business conducted by [TKTKonnect].TKTA breached Section 6.1 of the Operating Agreement by, among other things, usurping and misappropriating the Stellantis Opportunity and the Stellantis Marketing Engagement for its own benefit and to the detriment of [TKTKonnect] and its Members . . . . TKTA's breaches of Section 6.1 of the Operating Agreement have caused [Brunswick] to suffer continuing, immediate and irreparable harm and monetary damages . . . .

[DE 47 at 606 (paragraph numbers removed)]. Similarly, Count VI (Tortious Interference with Business Relations) asserts that

> Kavanaugh and Bunton knowingly interfered with [TKTKonnect]'s expectation of a business relationship with Stellantis through numerous overt acts intended to usurp and misappropriate the Stellantis Opportunity and the Stellantis Marketing Engagement. Kavanaugh and Bunton knowingly interfered with [TKTKonnect]'s expectation of a business relationship with Stellantis for the improper purpose of, among other things, usurping and misappropriating the Stellantis Opportunity and the Stellantis Marketing Engagement, and denying [Brunswick] the financial and other benefits of participation in the Stellantis-NBL Program and the performance of the Stellantis Marketing Engagement. Kavanaugh's and Bunton's knowing and improper interference with [TKTKonnect]'s expectation of a business relationship with Stellantis caused the Stellantis Opportunity and the Stellantis Marketing Engagement to be taken by TKTA rather than [TKTKonnect].

[*Id.* at 608–09 (paragraph numbers removed)]. Kavanaugh and Bunton argue Counts V and VI are "derivative claims that [Brunswick] does not have standing to bring." [DE 49 at 675].

Several months after filing the instant motion, Kavanaugh and Bunton submitted a standalone "counterclaim," then requested that the Clerk enter a default when Brunswick did not answer. [DE 78]. But they have not yet answered the amended complaint. Because the counterclaim was not asserted in a legitimate pleading, *see* Fed. R. Civ. P. 7(a), the Court struck it from the record and denied the request for entry of default. [DE 99].

## II. STANDARD

The parties disagree over the applicable legal standard. Kavanaugh and Bunton move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. [DE 49 at 678]. Brunswick cites Rule 12(b)(6) and argues that it has pleaded valid claims for which relief can be granted.[4] [DE 62 at 722–23].

While both Article III standing and real-party-in-interest objections are often referred to as "standing," they are distinct issues. *See Zurich Ins. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002). Article III standing is jurisdictional and implicates Rule 12(b)(1), while real-party-in-interest objections implicate Rule 12(b)(6). *See Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1322–23 (11th Cir. 2021); *see also Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016) (discussing Rule 17(a)'s "real-party-in-interest requirement"). The Sixth Circuit has

---

[4] Brunswick also argues that Kavanaugh's and Bunton's motion is actually a motion to reconsider the Court's denial (in relevant part) of their first motion to dismiss. [DE 62 at 721–25]. A motion to dismiss an amended complaint "is properly characterized as a motion for reconsideration to the extent that it reasserts legal arguments already raised and decided" regarding the original complaint. *Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 788 (W.D. Mich. 1998). Here, Kavanaugh and Bunton do not merely reassert their prior arguments regarding Brunswick's standing. The previous motion broadly argued that Brunswick lacked "standing to bring *any* of the alleged claims." [*See* DE 17 at 145–47 (emphasis added)]. The instant motion is more particularized and specifically addresses the allegations in Counts V and VI of the amended complaint. [DE 49 at 677–81]. Brunswick has been permitted to amend its pleading, and the Court will accept Kavanaugh's and Bunton's responsive arguments. *Cf.* Fed. R. Civ. P. 15(a)(3).

recognized that "there is a degree of confusion in drawing a line . . . between these two distinct issues." *Cranpark*, 821 F.3d at 732. But courts generally agree that third-party standing issues such as "shareholder standing" are prudential, not constitutional or jurisdictional. *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 154–55 (3d Cir. 2022); *Doermer v. Callen*, 847 F.3d 522, 526 n.1 (7th Cir. 2017); *see also Williams v. City of Detroit*, No. 16-14112, 2019 WL 2410719, at *3–5 (E.D. Mich. June 7, 2019).

Here, Kavanaugh and Bunton assert that Brunswick cannot pursue what would be derivative claims on TKTKonnect's behalf. [DE 49 at 675]. The question is "to whom [Kentucky] law provides a legal right of enforcement." *Cranpark*, 821 F.3d at 731. This implicates *Brunswick's* power to bring Counts V and VI, not *the Court's* power to hear them. *See Potter*, 46 F.4th at 155. As a result, the instant motion presents a real-party-in-interest dispute, *see Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 614 (W.D. Tenn. 2011); *see also Blue Cross Blue Shield v. Endo Pharamaceuticals*, 454 F. Supp. 3d 686, 692 (E.D. Mich. 2020); *Williams*, 2019 WL 2410719, at *3–5, and the Court will address the motion under Rule 12(b)(6) and Rule 17(a).[5] *See Deal*, 991 F.3d at 1322–23; *Cranpark*, 821 F.3d at 731.

In order "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), a complaint must state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "construe the complaint in

---

[5] Because the instant motion is a facial challenge to the amended complaint, under Rule 12(b)(1), the same legal standard would apply. *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021); *see also Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023). However, Brunswick would bear the burden of persuasion. *See Ames v. LaRose*, 86 F.4th 729, 731–32 (6th Cir. 2023); *see also Potter*, 46 F.4th at 155. Since Kavanaugh and Bunton prevail even while bearing the burden under Rule 12(b)(6), that difference is immaterial.

the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (quotation marks omitted). However, factual allegations must be more than "speculative," and "conclusory allegations or legal conclusions" will not suffice. *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016) (quotation marks omitted). It is the defendant's burden to establish that the complaint fails to state a plausible claim for relief. *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 859 (6th Cir. 2023).

### III. ANALYSIS

Kavanaugh and Bunton assert that Counts V and VI are "derivative claims that [Brunswick] does not have standing to bring." [DE 49 at 675]. Brunswick appears to agree that it could not maintain derivative claims, but it argues that "Counts V and VI are direct claims." [DE 62 at 725, 727]. Therefore, the "dispositive question" is whether Brunswick's claims are "direct or derivative." *See Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).

It is a "general precept of corporate law that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation."[6] *Gaff v. Fed. Deposit Ins.*, 814 F.2d 311, 315 (6th Cir. 1987). "[A] well-recognized exception to this rule" provides that "'[w]here the shareholder suffers an injury separate and distinct from that suffered by other shareholders,' or the corporation as an entity, the shareholder may maintain an individual action in his own right." *Id.* (quoting *Twohy v. First Nat'l Bank,* 758 F.2d 1185, 1194

---

[6] TKTKonnect is an LCC, not a corporation. [DE 47 at 567]. Nonetheless, the parties' briefs present several cases on corporations and "shareholder" standing as persuasive authority. *E.g. 2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F. Supp. 2d 707, 715–16 (E.D. Ky. 2009); *Kepley*, 715 F.3d at 971–72. While there are structural differences between LLCs and corporations, what matters here is their similar distinctiveness from the parties that form them. *See Turner v. Andrew*, 413 S.W.3d 272, 276 (Ky. 2013); *see also Sparkman v. Consol Energy, Inc.*, 470 S.W.3d 321, 328 (Ky. 2015).

7

(7th Cir. 1985)). "LLC members, like corporate shareholders, lack standing to sue in their individual capacities when they have not suffered any injury that is separate and distinct from the injury to the LLC or its other members." *Smith v. Tarter*, 305 F. Supp. 3d 733, 740 (E.D. Ky. 2018). Under Kentucky law, for an LLC member to "maintain a direct action against . . . another member[] or a manager," that member must be able to "prevail without showing an injury or breach of duty to the [LLC]" itself.[7] Ky. Rev. Stat. § 275.337(1). In short, "when an LLC member's injury is merely derivative of an injury to the LLC, the LLC is the 'real party in interest' under Federal Rule of Civil Procedure 17, and the LLC member lacks standing to bring an individual capacity action." *Smith*, 305 F. Supp. 3d at 740 (citing *Wells Fargo Fin. Leasing, Inc. v. Griffin*, No. 5:13-cv-75-M, 2014 WL 241778, at *7 (W.D. Ky. Jan. 22, 2014)); *see also Gaff*, 814 F.2d at 317.

The claims at issue here—which are captioned as claims for tortious interference with contract and business relations, respectively—arise from *TKTKonnect's* business opportunities with Stellantis. [DE 47 at 605–06, 608]. Count V alleges that TKTA, under Kavanaugh's and Bunton's control, competed with *TKTKonnect* in violation of the company's operating agreement. [*Id.* at 605–07]. Count VI alleges that Kavanaugh and Bunton interfered with *TKTKonnect's* "expectation of a business relationship with Stellantis" and caused TKTA to take opportunities from *TKTKonnect*. [*Id.* at 608–09]. These allegations spell out injuries to TKTKonnect, not Brunswick.

*Smith v. Tarter* is analogous. There, the parties were stakeholders in many Kentucky companies, including several LLCs. 305 F. Supp. 3d at 736, 736 n.1. The plaintiffs alleged that the defendants "conspired to use sensitive company information to divert cost savings . . . to their own benefit," and they asserted direct claims against the LLCs' manager. *Id.* at 736, 740. Because

---

[7] Kavanaugh is TKTKonnect's manager. [DE 47 at 563]. Kavanaugh and Bunton are not themselves members of TKTKonnect, but they control member–entity TKTA. [*Id.* at 567].

8

the plaintiffs' claimed injuries were merely "indirect or incidental" to the LLCs' "expenditure of costs and loss of cost savings," the court found that they "lack[ed] standing to maintain an individual capacity action" even as LLC members. *Id.* at 740. Similarly, while Brunswick might have suffered incidental harm as a result of harm that Kavanaugh and Bunton caused TKTKonnect, that does not provide Brunswick with a direct cause of action.

Kavanaugh and Bunton argue that *DT GRAT JMT, LLC v. Keeney*, No. 2:17-cv-101-DLB-CJS, 2017 WL 5194063 (E.D. Ky. Nov. 9, 2017), is also analogous. [DE 49 at 679–80]. The Court agrees. The parties in *DT GRAT JMT* organized 13 LLCs together. 2017 WL 5194063, at *1. One defendant was the managing member of each company. *Id.* When the plaintiffs discovered "financial mismanagement," they filed suit. *Id.* at *2–3. The court found that the harm alleged was "harm to . . . the thirteen limited-liability companies . . . not the individual members." *Id.* at *4. Because the plaintiffs could not prevail without showing injury to the companies themselves, *id.* at *5 (citing Ky. Rev. Stat. § 275.337(1)), they were not the real parties in interest, *id.* at *3–4 (citing Fed. R. Civ. P. 17(a)). Likewise, because Brunswick cannot prevail on Counts V and VI without showing injury to TKTKonnect, Brunswick is not the real party in interest here.

Brunswick argues that *Kepley* is analogous and controls here. [DE 62 at 726–27]. The parties in *Kepley* were also parties to the subject corporation's "Investors Rights Agreement," which restricted the sale of certain stock. 715 F.3d at 971. The defendant threatened to sell his restricted stock, as well as his right to purchase additional common stock, to a competitor. *Id.* The plaintiffs alleged that his actions forced them to sell their shares to the same competitor "at a value much lower than fair market value." *Id.* at 971–72. They sued for breach of contract. *Id.* The Sixth Circuit noted that the allegation of being "squeezed out" was not common among all shareholders and that, in fact, the defendant "never carried out his threat to sell his stock." *Id.* at 973–74. Because

the plaintiffs "suffered a separate and distinct injury," the court held that they "ha[d] standing to bring a direct claim." *Id.* at 974.

*Kepley* is distinguishable. First, as Kavanaugh and Bunton argue [DE 70 at 952], the claims differ. The *Kepley* plaintiffs sued for breach of contract under an agreement to which the defendant was a party. 715 F.3d at 971–72. By contrast, Kavanaugh and Bunton were not parties to TKTKonnect's operating agreement, and Brunswick has not sued them for breach of contract. Brunswick's breach claim(s) against TKTA are being litigated in the arbitration proceeding. [DE 47 at 566]. Second, the claimed injury in *Kepley* was unique to the plaintiffs. *See DT GRAT JMT*, 2017 WL 5194063, at *5 (discussing *Kepley*, 715 F.3d 969). Here, the direct injuries alleged in Counts V and VI are TKTKonnect's, and any indirect injuries are common to both of the company's members. [DE 47 at 605–09].

Brunswick argues that Counts V and VI seek to enforce a duty Kavanaugh and Bunton owed "directly" to Brunswick—specifically, "a common law duty not to tortiously interfere" with Brunswick's "contract rights" under TKTKonnect's operating agreement. [DE 62 at 727]. But on their face, Counts V and VI address *TKTKonnect's* rights, not Brunswick's. [DE 47 at 605–09]. Brunswick's *other* tortious-interference claims address its own expectations under TKTKonnect's operating agreement. Specifically, Count III regards the termination of Brunswick's membership interest in TKTKonnect; Count IV addresses Brunswick being frozen out of TKTKonnect's affairs. [*Id.* at 600–05]. As Kavanaugh and Bunton correctly note, "Counts V and VI do not state a cause of action for the alleged misappropriation of [Brunswick]'s 49% membership interest in TKTKonnect." [DE 49 at 680]. Brunswick's discussion of the termination of its membership interest [DE 62 at 728–29] does not relate to Counts V and VI of the amended complaint.

Counts V and VI both claim "damages in an amount to be determined at trial." [DE 47 at 607, 609]. In its response brief, Brunswick clarifies that its claimed damages are "the loss of . . . the fair value of its membership interest" in TKTKonnect. [DE 62 at 728]. According to Brunswick, this loss "is indisputably unique to it and thus separate and distinct from any injury suffered by" TKTKonnect. [*Id.*]. Even accepting for the sake of argument that Kavanaugh's and Bunton's actions could depreciate the value of one member-entities' interest and not the other's (i.e. TKTA's), that loss in value would not provide Brunswick with a cause of action. "A depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized . . . as the type of direct, personal injury which is necessary to sustain a direct cause of action." *Cf. 2815 Grand Realty*, 656 F. Supp. 2d at 715–16 (quoting *Gaff*, 814 F.2d at 315); *see also Smith*, 305 F. Supp. 3d at 739. Diminution in value "is merely an indirect or incidental injury." *Gaff*, 814 F.2d at 315.

In short, Counts V and VI assert only derivative claims that Brunswick lacks standing to bring. TKTKonnect is the real party in interest. *See* Fed. R. Civ. P. 17(a). Therefore, Counts V and VI fail under Rule 12(b)(6) to state a claim upon which relief can be granted.

### IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Kavanaugh's and Bunton's motion to dismiss Counts V and VI of the amended complaint [DE 49] is **GRANTED**. Pursuant to Rule 12(a)(4) and the Court's previous order [DE 99], Kavanaugh and Bunton **SHALL** answer the amended complaint within **fourteen (14) days** of this order's entry.

March 20, 2025

Rebecca Grady Jennings, District Judge
United States District Court

11